119 So.2d 296 (1960)
PENSACOLA TRANSIT CO., Inc., Appellant,
v.
William C. DENTON, Appellee.
No. B-170.
District Court of Appeal of Florida. First District.
April 5, 1960.
F. Churchill Mellen, Pensacola, for appellant.
Hertz, Shelley & Crowell, Pensacola, for appellee.
CARROLL, DONALD, Judge.
The defendant has appealed from an adverse judgment entered by the Court of Record of Escambia County in favor of the plaintiff-appellee in the amount of $18,500. An order of the court denying the defendant's motion for a new trial is also sought to be reviewed.
At the close of the defendant's case in the trial the court directed a verdict for the plaintiff on the issue of the defendant's liability. The case was later submitted to the jury on the sole issue of damages, with the result that the jury brought in a verdict assessing the plaintiff's damages at $18,500.
The first two points on appeal question the correctness of the court's direction of the verdict for the defendant on the issue of liability.
This was an action for damages resulting to the plaintiff and his automobile when a bus belonging to the defendant crashed into the rear of his automobile a few moments after the plaintiff had stopped his car for a red traffic light at an intersection in Warrington, Escambia County.
At the trial the plaintiff testified that he did not see the bus approaching before the crash. The only eyewitness to the collision itself was the defendant's bus driver. His exact testimony concerning the events immediately preceding the collision was as follows:
"I was on my regular route, coming from the Naval Air Station to town, and left the Naval Air Station at eleven-ten on that morning and I was coming up, or down, Barrancas Avenue, heading in town or heading toward the city from the Naval Air Station, and I got to the intersection of Barrancas Avenue and Jackson, and approaching the intersection, which is in a school zone and we are not allowed but fifteen miles per hour in the school zone, so I was well within the speed limit, and I was about seventy-five feet behind this car when they stopped for *297 the traffic light and I applied my brakes normally and they didn't hold. For some reason they didn't take. I let up on my brake clutch again and applied my brakes again and it still didn't hold, and I began to look for a place to go, and there was a line of traffic on my left and the utility pole just before I get to the Britt Service Station on my right. I couldn't turn right or left and this man's car was directly in front of me and I hit him from the rear."
The bus driver further testified that his air brake "simply did not function," that he estimated that he was travelling about 15 to 20 miles per hour when he ran into the back of the plaintiff's car, and that he tested his brakes on the scene after the accident and they worked.
As the Florida Supreme Court held in the recent case of Bellere v. Madsen, Fla. 1959, 114 So.2d 619, 621, "where a defendant runs into the rear of plaintiff's automobile while plaintiff is stopped for a traffic light or at an intersection, there is a presumption of negligence of the defendant on which the plaintiff would be entitled to recover in the absence of an explanation by the defendant." See also Shedden v. Yellow Cab Company, Fla.App., 1958, 105 So.2d 388, and McNulty v. Cusack, Fla.App., 1958, 104 So.2d 785.
Under this just-quoted rule, properly considered, the question then is whether the explanation of the defendant's driver is sufficient to permit the jury lawfully to conclude therefrom that the presumption of negligence, which arose when the bus crashed into the rear of the plaintiff's car stopped at the intersection, had been overcome by that explanation. We do not think a judge, with his limited powers in the field of the determination of facts, can determine this question without "climbing into the jury box," so to speak, and encroaching upon the exclusive domain of the jury. We hold, therefore, that the trial judge erred in granting the directed verdict against the defendant on the issue of liability. The evidence adduced at the trial on that issue, including the bus driver's explanatory testimony, should have been submitted to the jury under proper instructions for their determination of the facts on the issue of the defendant's liability. We conclude, therefore, that the trial court committed error and that the judgment appealed from must be reversed.
In view of this conclusion no need, of course, exists for us to consider and determine other questions raised on this appeal. Nevertheless, in the interest of aiding the trial court and the parties on a re-trial of this cause, if it should be tried again, we make the following observations concerning an incident that took place at the trial during the cross-examination of the defendant's bus driver:
During the course of this cross-examination the plaintiff's counsel asked the bus driver:
"When you first walked up to Mr. Denton, didn't you just give him a card and advise him that you were insured?"
The witness replied that he did not. The next question was whether he gave the plaintiff, Denton "a card at all," to which the witness replied "Not at that time." Thereupon the defendant's counsel objected and moved for a mistrial, to which the court said "Denied." There was no other evidence in the trial, either proffered or presented, that would lay a predicate for the query about insurance. The record shows that the trial court failed, at that point or at any other time during the trial, to instruct the jury that they were to disregard and should not consider the reference to insurance. The record fails to reveal that either party at any time during the trial requested the court to give such an instruction.
Every member of the bar of this state must be familiar with the following long-established rule as expressed by the Supreme *298 Court of Florida in Caris Markets, Inc., v. Meyer, Fla. 1953, 69 So.2d 789, 793:
"We are committed to the rule that evidence of insurance carried by a defendant is not properly to be considered by the jury because that body might be influenced thereby to fix liability where none exists, or to arrive at an excessive amount through sympathy for the injured party and the thought that the burden would not have to be met by the defendant. Ryan v. Noble, 95 Fla. 830, 116 So. 766."
On the other hand, as the Supreme Court recognized in that and other cases, there are several circumstances in which the mentioning of the defendant's insurance may not result in a reversible error.
Under any court system it is difficult to attain a true and just result even under the most favorable conditions because of the frailty of man and his subjectivity to various prejudices and other influences that may warp his judgment in attempting to attain the ultimate truth in a given factual situation. The injection by either party to a cause, whether deliberate or inadvertent, of any such improper influence in a jury trial is a distinct disservice to the administration of justices, and lawyers, as officers of the courts, and the courts, on their own motion if need be, must be ever vigilant to see that no such influence creeps into the proceedings in even the slightest degree and subverts the noble purpose of our court system to provide "justice under law."
The injection of such an influence makes the task of an appellate court an impossible one. No one on earth can tell with certainty the full effect of that influence upon a juror's mind. In a case of evidence of insurance, for instance, who can tell whether a juror might not have a stronger prejudice against the defendant than against an insurance company? Then, again, who can tell whether a judge's instruction to disregard a mention of insurance would not serve to emphasize the fact of insurance rather than to eliminate it from his mind? The only acceptable answer to this problem is for the bench and bar religiously to keep every improper influence of every nature from coming before a jury, lest such influence act as a festering sore and result in a miscarriage of justice.
Reversed.
WIGGINTON, Chief Judge, and STURGIS, J., concur.